USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/04/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------

GOOGLY EYE CRU, LLC, a New York Limited Liability Company,

                Plaintiff,

    - against -

FAST RETAILING USA, INC., a New York Corporation; UNIQLO USA, LLC, a Delaware Limited Liability Company; A.S.H.S. LIMITED, an English Limited Company, d/b/a ANYA HINDMARCH; DOES 1-10 inclusive,

                Defendants.

**24 Civ. 3709 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Googly Eye Cru, LLC ("GEC") brings this action against defendants Fast Retailing USA, Inc. ("Fast Retailing"), Uniqlo USA, LLC ("Uniqlo"), A.S.H.S. Limited, ("A.S.H.S."), and DOES 1-10 (collectively "Defendants"), alleging trademark infringement and trade dress infringement under 15 U.S.C. § 1125(a). (See Dkt. No. 1.) Now before the Court is Defendants' letter Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (See Dkt. No. 24-1.) For the reasons discussed below, Defendants' Motion is **DENIED**.

                I.    BACKGROUND[1]

---

[1] Except as otherwise noted, the following background derives from the Amended Complaint. The Court takes all facts alleged therein as true and construes all justifiable inferences arising therefrom in the light most

1

GEC creates, sells, and promotes lifestyle and apparel products bearing the GEC logo. GEC owns two federally registered trademarks (collectively, the "Marks" or "Mark") for a googly eye motif which it places on its apparel products such as t-shirts, hats, and other accessories. The Mark is a simplistic cartoon rendition of an eyeball with a black pupil and a white slit cutting halfway into the pupil. One trademark (No. 7,031,641) is a pair of the eyeballs with the pupils pointed towards each other in a "cross-eyed" fashion. The other trademark (No. 6,648,320) is a single eyeball with the pupil pointed down. The Mark is placed on all of GEC's products, which it sells at its online storefront and brick-and-mortar retail stores.

Fast Retailing, through its wholly owned subsidiary Uniqlo, launched a global collaboration with A.S.H.S. called "Uniqlo x Anya Hindmarch 2023 Winter Collection." The collaboration sold apparel affixed with a pair of eyes (the "Infringing Mark") on hats, hangtags, scarves, and other products. The Infringing Mark on Defendants' apparel consists of a pair of black-and-white eyeballs, without the slit in the pupil, pointing up and towards the right.

---

favorable to the plaintiff, as required under the standard set forth in Section II below.

On January 3, 2024, GEC sent a letter to Fast Retailing demonstrating its prior use and rights in the Mark and requested to discuss a resolution to the dispute but to no avail. On May 14, 2024, GEC filed the complaint in this action (Dkt. No. 1, "Complaint"). The Complaint asserts claims for trademark infringement and trade dress infringement. (Complaint at 11-12.) The parties exchanged pre-motion letters pursuant to this Court's Individual Practices, (see Dkt. No. 24-1), and subsequently consented to the Court deeming the pre-motion letters as a fully briefed motion to dismiss.[2] (Dkt. No. 23.)

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will

---

[2] The pre-motion letter exchange occurred between GEC and Defendants Fast Retailing and Uniqlo. On September 12, 2024, Defendant A.S.H.S joined in Uniqlo's and Fast Retailing's request for dismissal.

3

reveal evidence of illegal' conduct." Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020) (quoting Twombly, 550 U.S. at 556); see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

In determining whether a complaint states a claim that is plausible, courts must "give no effect to assertions of law or to legal conclusions couched as factual allegations but [must] accept as true the factual allegations of the complaint and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (cleaned up); see Iqbal, 556 U.S. at 678.

### III. DISCUSSION

A. The Trademark Infringement Claim[3]

To state a claim for trademark infringement, a plaintiff must allege sufficient facts to establish that: (1) it has a valid mark entitled to protection and that (2) the

---

[3] It is unclear from the Complaint whether GEC's trademark infringement claim is being brought under the Lanham Act or New York common law. Regardless, both claims are analyzed under the same framework. Reply All Corp. v. Gimlet Media, LLC, 843 F. App'x 392, 400 (2d Cir. 2021).

4

defendant's actions are likely to cause confusion with that mark. Nat'l Acad. of Television Arts and Scis., Inc. v. Multimedia Sys. Design, Inc., 551 F. Supp. 3d 408, 426-27 (S.D.N.Y. 2021) (citing Guthrie Healthcare Sys. v. ContextMedia, Inc., 826 F.3d 27, 37 (2d Cir. 2016)). The Court will address each element in turn.

1. Valid Mark Entitled to Protection

GEC has adequately shown that it has a valid mark entitled to protection. A "certificate of registration with the United States Patent and Trademark Office ("USPTO") is *prima facie* evidence that the mark is entitled to protection." Nat'l Acad. of Television Arts and Scis., 551 F. Supp. 3d at 427. GEC has attached screenshots showing an active and valid registration of its Marks with the USPTO. This entitles GEC to a presumption that the Marks are valid. Energizer Brands, LLC v. My Battery Supplier, LLC, 529 F. Supp. 3d 57, 61 (E.D.N.Y. 2021).

Defendants argue that GEC's Mark does not warrant protection because it fails to identify GEC as the source of the product to which the Mark is attached. They base this argument on two points: (1) that the Mark is generic and a

common design[4] and (2) that the Mark is inconsistently applied to Plaintiff's products which suggests that GEC is not using the googly eyes for the purpose of brand identification. The Court will address each of these arguments in turn.

A registered mark may be cancelled at any time on the grounds that it has become generic. Pilates, Inc. v. Current Concepts, Inc., 120 F. Supp. 2d 286, 296 (S.D.N.Y. 2000). A design is generic if it "conforms to a well-established industry custom" or has been used so frequently that the design can "no longer be understood to represent a source" of the product. New Colt Holding Corp. v. RJG Holdings of Florida, Inc., 312 F. Supp. 2d 195, 210 (D. Conn. 2004). This fact-intensive inquiry requires a strong showing that consumers do not identify the design or trade dress with its source, or any source. Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 110 (2d Cir. 2000). Defendants argue that googly eyes are a common design, pointing to the "googly eyes" craft supply commonly used by children and that are often affixed to mundane objects to give them personality.

---

[4] Somewhat puzzling, Defendants maintain that they are not arguing that the Marks are generic but rather that the Marks fail to function as source-identifying trademarks *because* they are both generic and inconsistently applied. Defendants predominantly rely on genericism caselaw but note that the caselaw is analogous only "to a point." Defendants fail to define what that point is. Because the authority Defendants rely on all discusses the genericism, the Court reads Defendants' argument as asserting a genericism defense, in part.

Defendants also assert that an illustration of googly eyes is a common mobile device emoji. Accordingly, to Defendants, the Mark fails to convey any meaning to consumers regarding the source of the product because of the ubiquity of googly eyes.

Whether a trademark is generic, or for that matter source-identifying, is a question of fact not properly determined by the pleadings alone. Fine Foods Int'l (New York) v. North America Fine Foods, Inc., No. 99-CV-1062 (ILG), 1999 WL 1288681, at *10 (E.D.N.Y. 1999). Defendants have not submitted any evidence on this issue of which the Court could take judicial notice. Defendants merely suggest that because googly eyes are a common emoji and googly eyes craft supplies often adorn children's art projects, GEC's Marks as applied to its apparel are generic. While variations of cartoon eyeballs are certainly widely used on various products, on the record before the Court it is premature to determine whether GEC's Marks as used specifically on clothing apparel are generic. See FraganceNet.com, Inc. v. Les Parfums, Inc., 672 F. Supp. 2d 328, 333 (E.D.N.Y. 2009) (whether a registered trademark is generic is a fact-specific inquiry inappropriate at the motion to dismiss stage.).

Defendants' second attempt to overcome the presumption of validity of the registered Marks also falls short. Defendants point out that GEC's use of the Marks are

7

inconsistent, with some eyes looking down, some looking in the same direction, and others being cross-eyed. However, these inconsistencies are marginal and appear to just be variations. Because the Marks still retain the same signature features – a black-and-white cartoon illustration of two eyeballs with black pupils - the inconsistency in the direction the eyes are facing is immaterial to the Marks' distinctiveness and validity at this stage. Whether this alleged inconsistency results in the public's failure to identify the Mark with its source is a question of fact and is not to be determined on a motion to dismiss.

> 2. Likelihood of Consumer Confusion

To prevail on trademark infringement claim, a plaintiff must also allege that the Infringing Mark is likely to cause consumer confusion as to origin or sponsorship of its goods. See Guthrie Healthcare Sys., 826 F.3d at 37 (2d Cir. 2016). The central question "is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." Savin Corp. v. Savin Grp., 391 F.3d 439, 456 (2d Cir. 2004) (citations omitted). Ultimately, "satisfaction of the likelihood-of-confusion standard requires a 'probability of confusion, not a mere

8

possibility.'" Guthrie Healthcare Sys., 826 F.3d at 37 (citations omitted).

In determining whether there is consumer confusion under the Lanham Act, courts use the "Polaroid test," which weighs eight considerations identified by the Second Circuit in Polaroid Corp. v. Polaroid Elecs. Corp., 287 F.2d 492 (2d Cir. 1961). These factors are: (1) the strength of the trademark, (2) similarity of the marks, (3) proximity of the products and their competitiveness with one another, (4) the likelihood that the plaintiff will "bridge the gap" between the two markets, (5) evidence of actual consumer confusion, (6) evidence that the imitative mark was adopted in bad faith, (7) the quality of the defendant's product, and (8) sophistication of consumers in the relevant market. Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 115 (2d Cir. 2009).

The likelihood of confusion inquiry, however, is "not a mechanical process where the party with the greatest number of factors weighing in its [favor] wins." Vox Amplification Ltd. v. Meussdorffer, 50 F. Supp. 3d 355, 372 (E.D.N.Y. 2014). Instead, "a court should focus on the ultimate question of whether consumers are likely to be confused." Nabisco, Inc. v. Warmer-Lambert Co., 220 F.3d 43, 46 (2d Cir. 2000). Although the parties do not extensively discuss the Polaroid

factors in their letters, the Court will independently examine each to comprehensively determine whether GEC states a claim for relief.

### a. Strength of Plaintiff's Mark

The "strength of the mark" examines the distinctiveness of the mark. Trademark law classifies marks into four categories to define their degrees of inherent distinctiveness: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 160 (2d Cir. 2016). "A generic term is a common name . . . that describes a kind of product." Two Hands IP LLC v. Two Hands America, Inc., 563 F. Supp. 3d 290, 302 (S.D.N.Y. 2021) (citations omitted). A descriptive mark is "one that tells something about a product, its qualities, ingredients, or characteristics." Id. (citations omitted). Descriptive marks are protectable only if there is evidence of secondary meaning. Id. (citations omitted). A suggestive mark suggests the product, but "it may take imagination to grasp its nature." Id. (citations omitted). Arbitrary or fanciful marks "do not communicate any information about the product either directly or by suggestion." Girl Scouts of the United States of America v. Boy Scouts of America, 597 F. Supp. 3d 581, 595 (S.D.N.Y. 2022) (citations omitted). A mark is entitled to a greater

degree of protection the closer it is to arbitrary or fanciful. Jackpocket, Inc. v. Lottomatrix NY LLC, 645 F. Supp. 3d 185, 238 (S.D.N.Y. 2022).

GEC's Marks are arbitrary bordering on fanciful. The Marks do not communicate any information about the product either directly or by suggestion. Bulman v. 2BKCO, Inc., 882 F. Supp. 2d 551, 559 (S.D.N.Y. 2012). The presence of cartoon googly eyes on hats, scarves and other apparel does not otherwise convey information regarding the characteristics of those items of clothing. Defendants do not dispute that the Mark is arbitrary and/or fanciful but instead maintain that the Mark is not source-identifying because it is an inherently common design and the uses are inconsistent. Having already addressed these arguments above, the Court finds that this factor favors GEC.

### b. Similarity Between the Two Marks

"In determining similarity, courts are cautioned not to engage in a minute dissection of various elements of the mark." Best Cellars, Inc. v. Wine Made Simple, Inc., 320 F. Supp. 2d 60, 78 (S.D.N.Y. 2003) (citations omitted). Rather, courts should inquire into both the marks' physical resemblance and the "contexts in which they appear." JTH Tax LLC v. AMC Networks Inc., 694 F. Supp. 3d 315, 336 (S.D.N.Y. 2023).

11

As presented in the Complaint, Defendants' Infringing Marks as they appear on their products closely resemble GEC's Marks on their products. The Infringing Marks, like GEC's Marks, are placed on hats, shirts, and hangtags. In their opposition letter, Defendants focus on distinct elements of each design, arguing that the googly eye pupils are facing different directions and that the Infringing Marks do not have the characteristic pupil slit.  While there are minor differences in the design of the pupil of the googly eye illustration, it is not clear from the face of the Complaint that consumers would appreciate these differences. Moreover, this inquiry should not focus on minor distinctions between the marks but instead on the "general impression conveyed to the public" by the marks. Lang v. Retirement Living Pub. Co., Inc., 949 F.2d 576, 581-82 (2d Cir. 1991). Given the context in which the Infringing Marks appear on Defendants' products, the Court finds that the Marks are sufficiently similar on the face of the Complaint for this factor to weigh in favor of GEC.

### c. Competitive Proximity of the Parties' Products or Services and Bridging the Gap

The competitive proximity factor focuses on whether the two products at issue compete, "with special attention devoted to assessing whether goods 'serve the same purpose,

fall within the same general class, or are used together.'" AM General LLC v. Activision Blizzard, Inc., 450 F. Supp. 3d 467, 481 (S.D.N.Y. 2023) (quoting Lang, 949 F.2d at 581). The relevant products that GEC and Defendants are selling are clothing items such as hats, gloves, scarves, and shirts and are clearly in close competitive proximity. Defendants do not dispute this factor. Therefore, this factor weighs in Plaintiff's favor.

Bridging the gap refers to the likelihood that GEC will enter Defendant's market in the future, "or that consumers will perceive the senior user as likely to do so." Star Industries, Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 387 (2d Cir. 2005). Because the products at issue are already in competitive proximity, there is no gap to bridge, making this factor irrelevant. Id.; See also Paddington Corp. v. Attiki Imps. & Dists., Inc., 996 F.2d 577, 586 (2d Cir. 1993) (same).

### d. Actual Consumer Confusion

GEC has not proffered any evidence of actual confusion nor have Defendants proffered evidence indicating a lack thereof. The absence of evidence indicating actual consumer confusion is not fatal to a Lanham Act claim at the motion to dismiss stage, particularly because actual confusion is difficult to prove. JTH Tax LLC, 694 F. Supp. 3d at 338. As such, this consideration is neutral.

13

e. Defendant's Good Faith in Adopting Plaintiff's Mark

The Complaint contains no facts that plausibly suggest Defendants were aware of GEC's registered Marks and intentionally sought to deceive customers into purchasing Defendants' apparel. Id. GEC alleges that "Defendants infringing acts have been knowing, intentional, wanton, and willful" but fails to plead any non-conclusory facts suggesting the same. Absent any facts showing bad faith, this factor weighs in Defendant's favor. See MidCap Business Credit, LLC v. MidCap Financial Trust, 655 F. Supp. 3d 193, 210 (S.D.N.Y. 2023).

f. Quality of Defendant's Product

The quality of Defendants' product "is primarily concerned with whether the [Plaintiff's] reputation could be jeopardized by virtue of the fact that the [Defendants'] product is of inferior quality." The Sports Auth. Inc. v. Prime Hosp. Corp., 89 F.3d 955, 965 (2d Cir. 1996). On the flip side, two products of equal quality "may tend to create confusion as to source because of this very similarity." Jackpocket, Inc., 645 F. Supp. 3d at 272 (citation omitted). GEC does not allege any specific facts which plausibly suggest that Defendants are damaging its reputation by virtue of their inferior products, nor does it allege specific facts

14

suggesting that the quality is equal thus causing confusion. Therefore, this factor is neutral. Id.

### g. Sophistication of the Consumer

This factor analyzes the degree to which a buyer examines a product before purchase. Id. "The more sophisticated the consumers, the less likely they are to be misled by similarity in marks. In determining consumer sophistication, courts consider the product's nature and price." Gibson v. SCE Grp., Inc., 391 F. Supp. 3d 228, 248-49 (S.D.N.Y. 2019) (citations omitted). "At the motion to dismiss stage, [however,] [t]he Court looks to the allegations in the Complaint, and reserves [] questions of fact for summary judgment." A&E Television Networks, LLC v. Big Fish Entertainment, LLC, No. 22 Civ. 7411, 2023 WL 4053871, at *21 (S.D.N.Y. June 16, 2023). The Complaint does not allege facts regarding consumer sophistication and the Court accordingly finds this factor to be neutral. Id.

### h. Balancing the Factors

"The Polaroid factors are to be weighed holistically in determining whether the party seeking to establish an infringement claim has demonstrated the probability of confusion of a substantial number of consumers of the relevant class." Capri Sun GMbH v. American Beverage Corp., 595 F. Supp. 3d 83, 177 (S.D.N.Y. 2022). At this stage, the first

15

three considerations favor GEC while the rest of the factors are neutral, with one factor favoring Defendants. While the Polaroid factors do not decisively weigh in favor of either party, they modestly favor GEC. The Court is persuaded that the issue of likelihood of confusion must proceed to discovery for further factual development. See Pulse Creations, Inc. v. Vesture Group, Inc., 154 F. Supp. 3d 48, 55 (S.D.N.Y. 2015) ("likelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss.").

B.   TRADE DRESS CLAIM

GEC's second claim against Defendants asserts trade dress infringement under Section 1125(a) of the Lanham Act. 15 U.S.C. § 1125(a). In addition to protecting registered marks, the Lanham Act also provides a cause of action for the "use by any person of 'any word, term, name, symbol, or device, or any combination thereof which is likely to cause confusion as to the origin, sponsorship, or approval of his or her goods.'" Wal-Mart Stores, Inc. v. Samara Bros, 529 U.S. 205, 209 (2000) (citing 15 U.S.C. § 1125(a)). Trade dress refers to "the design and appearance of the product as well as that of the container and all elements making up the total visual image by which the product is presented to customers." Capri Sun GmbH, 595 F. Supp. 3d at 187. In order to succeed on a claim for trade dress infringement, a plaintiff must

prove (1) that the trade dress is non-functional; (2) that the trade dress is either inherently distinctive or has acquired secondary meaning in the marketplace, (3) that there is the likelihood of confusion between the plaintiff's good or service and the defendant's. Id.

First, the Court finds that the design feature at issue here is not "essential to the use or purpose" of the related apparel and is thus "non-functional." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 116 (2d Cir. 2001). Moreover, GEC has sufficiently pleaded the remaining elements necessary to state a claim for trade dress infringement. As discussed above, GEC registered its trade dress with the USPTO and attached proof of its registration. Its googly eye design is thus presumed to be distinctive. See Nike, Inc. v. Reloaded Merch LLC, 22 Civ. 10176, 2023 WL 8879274, at *6-7 (S.D.N.Y. Dec. 22, 2023). Defendants argue that GEC's Complaint fails to state a claim for trade dress infringement because it does not "articulate with any precision its trade dress and that the photos are not sufficient." However, recent decisions in the Southern District of New York have persuaded this Court that GEC need not plead the precise contours of their trade dress in a trade dress infringement action where the trade dress has been registered with the USPTO. See id; see also Nike, Inc. v. USAPE LLC, 23 Civ. 660, 2024 WL 967223, at *7

(S.D.N.Y. Mar. 4, 2024). Registered trade dress holders have already satisfied this standard through the registration process, and it is therefore unnecessary to demand the same showing again. Reloaded Merch LLC, 2023 WL 8879274, at *6; see also USAPE LLC, 2024 WL 967223, at *7 ("Where – as here – trade dress has been registered, however, the PTO has already considered the design elements, their distinctiveness, and whether the trade dress is functional."). In its Complaint, GEC attached images showing that it registered the Marks with the USPTO. As such, it is not required to define with precision the elements and features of the Marks.

GEC satisfied the final prong by alleging facts sufficient to show a likelihood of confusion, as discussed above.

## IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendants Fast Retailing USA, Inc. ("Fast Retailing"), Uniqlo USA, LLC ("Uniqlo"), A.S.H.S. Limited, ("A.S.H.S."), and DOES 1-10 (collectively "Defendants") to dismiss the Complaint of plaintiff Googly Eyes Cru, LLC is **DENIED**; and it is further

**ORDERED** that Defendants shall answer the Complaint within 21 days of the date of this Order.

18

**SO ORDERED.**

Dated:    4 March 2025
         New York, New York

_____
Victor Marrero
U.S.D.J.